IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN, et al., : | |
|     Plaintiffs, : | |
| : | CIVIL ACTION NO. 17-4225 |
| v. : | |
| : | |
| WAL-MART STORES EAST, L.P. : | |
|     Defendant : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                        September 18, 2018
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiffs Sylvia Martin and Donald Martin (the "Martins" when referring to both Plaintiffs, and "Martin" when referring just to Plaintiff Sylvia Martin) have filed a two count claim against Wal-Mart Stores East, L.P. ("Wal-Mart") asserting claims of negligence and loss of consortium. The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

The claims arise from a fall sustained by Martin in the Home and Garden section of the Wal-Mart store in Norristown on March 25, 2016. (Compl. 2, Doc. 40.) In her complaint, she asserts that she sought to purchase a red patio chair pad that was available only on an "overhead rack." (Compl. 3.) After unsuccessfully seeking the assistance of a Wal-Mart employee, she attempted to retrieve the pad herself by stepping up onto the display rack and reaching for the pad. This effort failed when she lost her balance and fell. (Compl. 3-4.) As a result of the fall, she sustained multiple injuries including a "displaced fracture" of her left femur. (Compl. 4.)

1

Upon the completion of discovery, Wal-Mart filed a motion for summary judgment asserting that there are no genuine issues of material fact either on the question of liability or the question of Plaintiffs' entitlement to punitive damages, and that they should be granted judgment as a matter of law on all claims or alternatively on the punitive damages claim alone. The Martins counter that there are genuine issues of material fact. The record before us is offered in support of both Wal-Mart and the Plaintiffs. It includes sworn testimony from Martin, an affidavit of Plaintiff Donald Martin, deposition testimony of the Norristown Wal-Mart's store manager and cashier, Plaintiff's expert report by a "retail industry consultant," and a surveillance videotape of the incident. For the reasons set forth below, we deny Defendant's motion for partial summary judgment on liability, but we grant the motion for partial summary judgment on Plaintiffs' punitive damages claim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable juror could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

The moving party bears the initial burden of "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to successfully oppose a properly supported motion, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In reviewing the summary judgment record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994). The court may not make credibility determinations or weigh the evidence in reaching its conclusion. *See Anderson*, 477 U.S. at 255 (observing that these are jury functions).

## III. DISCUSSION

### A. Liability

Plaintiff asserts a negligence claim based on premises liability. As a federal court exercising diversity jurisdiction in this case, we apply the substantive law of Pennsylvania to this dispute. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).

We start with the proposition that in a case sounding in negligence, a plaintiff must demonstrate that: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breached caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27-28 (Pa. 2006) (citation omitted). Further, in a premises-liability action the duty of care that a possessor of land owes to one who who enters upon the land "depends upon whether [the latter] is a trespasser, licensee, or invitee." *Carrender v. Citterer*, 469 A.2d 120, 123 (Pa. 1983) (citation omitted); *see also Guttridge v. AP Green Serv., Inc.*, 804 A.2d 643, 655 (Pa. Super. Ct. 2002). The parties agree here that Plaintiff was an invitee and entitled to Wal-Mart's highest degree of care. (*See* Def. Br. 4, Doc. 22-1; Pl. Reply 9-10, Doc. 31-1.)

The general rule is that a business owner owes its invitee a duty to maintain the premises in a reasonably safe condition. *See David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740

3

F.2d 230, 236 (3d Cir. 1984); *see also Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 745 (Pa. 1984) (explaining that duty). A business owner is, however, not "an insurer of the visitor's safety." *Rabutino v. Freedom State Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002). Rather, it is subject to liability for harm caused to its invitees by a condition on the land if it:

> (a) knows or by the exercise of reasonably care would discover the condition, and should realize that it involves an unreasonably risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

A plaintiff's ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action. *See* Restatement (Second) of Torts § 343. Further, Pennsylvania courts require complainants to prove the existence of a harmful condition and proof that the defendant knew or should have known of the condition. *See, e.g.*, *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994). A possessor of land, however, is not liable to invitees "'for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (quoting Restatement (Second) of Torts § 343A.).

A danger is known not just when the plaintiff "'know[s] it to exist, but [] also . . . recognize[s] that it is dangerous [and appreciates] the probability and gravity of the threatened harm.'" *Id.* at 124 (quoting Restatement (Second) of Torts § 343A cmt. b.). A danger is obvious when "'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment.'" *Id.* at 123-24 (quoting Restatement (Second) of Torts § 343A cmt. b.). Although the question of whether a danger was known or obvious is usually a question of fact for the jury,

4

the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Id.* at 124 (quoting Restatement (Second) of Torts § 328B cmts. c., d.).

In its motion for summary judgment, Wal-Mart contends that the "dangers associated with climbing the rack were apparent" and that "[a] person of normal intelligence and judgment would have appreciated that falling off of the rack [was] an expected outcome." (Def. Br. 5.) Martin rebuts that she was unaware of the danger and that Wal-Mart's own safety policies—of "zoning" merchandise and placing "warning labels" on merchandise racks—demonstrate that the danger was not obvious. (Pl. Br. 10.) Martin also asserts that there are material facts in dispute as to the reasonableness of Wal-Mart's conduct with regard to its "duty to properly and safely merchandise products for customer access." (Pl. Br. 13-16.)

Defendant cites the Third Circuit's decision in *Ernst v. Barr*, 90 Fed. Appx. 670 (3d Cir. 2004) and the Pennsylvania Supreme Court's decision in *Carrender* to support its proposition that Plaintiff encountered a danger that she knew existed or that should have been obvious to her. In *Ernst*, the plaintiff fell down the staircase of a home owned by his stepmother while carrying a tray of dishes. *Ernst v. Barr*, No. 01-1115, 2002 WL 32348276, at *1 (E.D. Pa. Nov. 19, 2002). Based on earlier visits to the home, he knew there was a handrail, but chose not to use it for support. *Id.* The Third Circuit, applying Pennsylvania law, upheld summary judgment for the homeowner in that the danger of descending the stairs with a tray full of dishes was obvious to plaintiff, especially in light of his familiarity with the home. *Ernst*, 90 Fed. Appx at 670.

In *Carrender*, a patient visiting the defendant chiropractor parked her vehicle on an icy patch of parking lot despite the availability of other parking spaces with less treacherous conditions. 469 A.2d at 121-22. She successfully traversed the icy surface, and fell only when returning to her vehicle after the appointment. *Id.* at 122. The Pennsylvania Supreme Court

found that "[her] own testimony showed not only that the existence of the ice was obvious to a reasonably attentive invitee, but also that [she] herself was aware of the ice and appreciated the risk of traversing it." *Id.* at 186.

Here, unlike in *Ernst* and *Carrender*, Plaintiff lacked the subjective awareness of the risk she faced. When asked about her knowledge of the danger of reaching for overhead merchandise, Plaintiff testified:

> Q: Now, when you stepped onto that second shelf, were you aware that there was a risk you could fall off?
> A: I didn't think about it. All I knew, I needed it and couldn't find anybody to help me.
> Q: Did you step onto that shelf knowing that you could injure yourself?
> A: I didn't think about it.
> Q: Do you believe it was dangerous for Wal-Mart to put that cushion on a shelf that high?
> A: Yes, I do.
> Q: So you climbed the rack knowing that the cushion was placed dangerously high?
> A: Well, I didn't realize it until after I fell.

Sylvia Martin Dep. 42:13-43:2.

The issue is then whether a reasonable person in Plaintiff's position, exercising "normal perception, intelligence, and judgment," would have recognized the potential falling hazard in attempting to retrieve the overhead cushion. When asked afterwards to describe the incident, Martin testified that she noticed a string dangling from the cushion and thought she could reach it.[1] She further testified that she grabbed onto the merchandise rack's vertical support beam for support as the stepped up to the second shelf on the rack.[2] Finally, she confirmed that the

---

[1] Martin testified "I just thought I could reach it, and I stepped up and I grabbed it by the string and it came down, and I lost my balance and fell." Martin Dep. 37:20-37:23.

[2] "Q: So Mrs. Martin, when you stepped onto this shelf, the second shelf, were you holding onto anything at that point?
A: I believe I was holding onto this, I'm not real sure, but I think I grabbed onto this first to pull me up and then that's when I tried to reach the string.
Q: And just to preserve for the record you indicated on the very right side of the photograph there is a metal beam?
A: Yes.

photograph presented to her, and provided to the Court as Defendant's Exhibit A, accurately represented the positioning of the merchandise rack on the date of the accident.[3]

We are convinced that a juror could differ as to whether a reasonable person in Plaintiff's position would have recognized the risk here. Although the cushion was set on a high shelf, the attraction of the dangling string and the support of the nearby beam suggest that the risk might have appeared lower than upon first blush. Further, it is not the mere act of standing on an elevated shelf that poses the gravest danger, but the act of retrieving the product, as Martin did here, that often causes one to lose balance. Appreciation of that danger may not be obvious, and, as Martin testified, might not be realized until after the fall.[4]

Wal-Mart contends that a reasonable person would have recognized the risk upon seeing the nearby caution sticker, which warned "Never climb on or . . . [illegible][5]" and depicted the figure of a falling customer. (Doc. 31-11.) Plaintiff rebuts that a reasonable customer would not have observed the "inadequate" sticker in that it was placed "at the bottom of the display rack, a foot or less off of the floor." (Pl. Br. 11, 17.) After reviewing Plaintiff's photos of the scene of the accident, we conclude that a juror considering the circumstances of this case could well find

---

Q: And at some point you grabbed onto that, correct?
A: I think so, yes." Martin Dep. 41:13-42:1.

[3] "Q: Does this rack generally reflect the setup that Wal-Mart had for this rack on the date of the accident?
A: Yes. Sometimes it's on the other side.
Q: But does this appear to be the same positioning and same set up that it was on the date of the accident?
A: Yes." Martin Dep. 40:4-40:11.

[4] "Q: So you climbed the rack knowing that the cushion was placed dangerously high?
A: Well, I didn't realize it until after I fell." Martin Dep. 42:24-43:2.

[5] The words that complete the sentence appear to have been defaced, rendering the sticker nearly illegible. (*See* Doc. 31-11.)

that the cautionary sticker would not have been apparent to a reasonable person in Martin's position.

We thus decline to find as a matter of law that the risk of reaching for the overhead cushion was known to Martin or would be obvious to a reasonable person in Martin's position. We also conclude that genuine issues of material facts remain in dispute as to whether Wal-Mart "exercise[d] reasonabl[e] care to protect [Martin] against the danger" as it relates to (1) the availability of employee assistance (and relatedly, the adequacy of Martin's efforts to obtain employee assistance); (2) Wal-Mart's policy of "zoning," i.e., relocating overhead merchandise to more accessible heights;[6] and (3) the adequacy of Wal-Mart's warning stickers.

As to the first point, Wal-Mart asserts that Martin sought employee assistance for "a mere three-and-half minutes" before opting to reach for the cushion herself (Def. Br. 2), and that she "never left the aisle" to look for help. (Def. Reply. Br. 2.) Wal-Mart points to its surveillance video in support of this contention. Martin cites her expert's report, noting that "[g]ood safety rules require an employee presence" (Balian Dep. 4), and responds that Wal-Mart "failed to adequately staff their Lawn and Garden Center section so that employees [would be] present and able to assist customers in obtaining merchandise." (Pl. Br. 14.)

At her deposition, Martin testified:

Q: When you say that you looked around, did you stay in the same place that you were and look around?
A: No, I walked up and down.
Q: Explain for me, when you say up and down, where specifically did you walk?
A: I was in that same aisle, but I walked down to the end and I looked to see if there was anybody down there, and then I walked to the other end and I couldn't see anybody that worked there.

---

[6] Plaintiff's expert testified that "[t]he accepted practice in the retail industry is that any and all products offered for sale must be easily and safely accessible by the customer . . .[and] [i]t becomes the responsibility of store personnel to bring down products from the upper storage area to the lower customer accessible area, or in Wal-Mart terminology, Zoning." (Balian Dep. 2-3.)

8

> Q: Did you at any point leave the lawn and garden center to look for associates outside of the center?
> A: No, I didn't.
> Q: Did you look for other customers in the area who could ask for help?
> A: I didn't see anybody there.

Martin Dep. 38:3-38:19.

Second, Martin contends that Wal-Mart "violated [its] own safety policy and procedure" when its associate failed to "bring down the bulky merchandise from the overhead storage area to the lower area" just fifteen minutes prior to Martin's fall. (Pl. Br. 15.) Wal-Mart responds that Martin's expert fails to discuss "whether there was a reasonable amount of time within which Ms. Daniels should have been expected to . . . zone[] after completing her duties related to assisting the other customer." (Def. Reply Br. 3.)

Finally, Wal-Mart contends that it satisfied its duty in part by its placement of "warning signs regarding the dangers of falling." (Def. Br. 7.) Martin rebuts that Wal-Mart's warning sticker was "ineffective" in that "no reasonable person would [have] observed [it]" given its location. (Pl. Br. 14, 17.)

These factual disputes are "material" in that they relate to Wal-Mart's duty to exercise reasonable care to protect its customers against a dangerous condition. Further, we conclude that the disputes are genuine in that a reasonable juror could disagree that Martin's failure to take time to leave the aisle seeking employee assistance was inadequate; that its associate adequately carried out her "zoning" duties in the given time frame; and that Wal-Mart's warning signs adequately put a customer on notice of the dangerous condition. We have considered the video evidence, the testimony offered by Martin, the testimony of Wal-Mart's store manager, and have reviewed the exhibits before us, and we decline to rule as a matter of law on these questions.

### B. Punitive Damages

Under Pennsylvania law, punitive damages may be awarded "for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766, 770 (2005), quoting *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984). To support a claim for punitive damages, a plaintiff must present evidence "sufficient to establish that: (1) [the] defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [the defendant] acted, or failed to act . . . in conscious disregard of that risk*." Hutchison*, 870 A.2d at 772 (citing *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1097-98 (1985)). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's action are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* "Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. 2005), *aff'd*, 592 Pa. 38, 922 A.2d 890 (2007).

Wal-Mart moves for summary judgment on the grounds that there is no evidence that it had subjective appreciation of the risk that a customer would disregard the caution signs, and voluntarily "climb" a merchandise rack despite the availability of employee assistance. (Def. Br. 4-5).

Plaintiffs respond that factual issues exist concerning punitive damages because it is Wal-Mart policy to encourage its employees to rotate difficult-to-reach products to more easily accessible locations, i.e., from high shelves to lower shelves. (Pl. Br. 4). Further, they assert that minutes prior to Martin's fall, Wal-Mart employee Rebecca Daniels retrieved a similar cushion from a high shelf adjacent to the site of Martin's eventual fall, but failed to rotate the cushion

Martin would seek to a lower shelf. Plaintiffs characterize this inaction by Daniels as a "conscious[] [choice]." (Pl. Br. 4).

While we believe that there is sufficient evidence to allow us to proceed on liability, we are convinced after thorough review of the record that no reasonable juror would conclude that Wal-Mart's actions and/or inactions here demonstrate "outrageous, willful, wanton, or reckless" conduct which the Pennsylvania Supreme Court has held necessary to support a punitive damages claim. Consistent with the two-prong analysis as set forth in *Hutchison*, we first find insufficient evidence that Defendant had a "subjective appreciation of the risk of harm to which the plaintiff was exposed." Plaintiffs infer Defendant's "subjective appreciation" of the risk from the preventive measures Wal-Mart took - it alerted customers to the risk of climbing with cautionary stickers, it offered the assistance of its employees to retrieve merchandise, and it encouraged its employees to relocate merchandise to lower shelves.[7] But that inference is flawed: it does not follow that Wal-Mart subjectively appreciated that Martin would voluntarily climb a merchandise rack merely because it enacted preventive measures to avoid such an occurrence in the first place.

Further, Plaintiffs have not submitted evidence demonstrating that this is a type of accident previously known to Wal-Mart, or that Wal-Mart's preventive measures were

---

[7] Wal-Mart store manager Ronald Floczak testified as follows:
"Q: . . . [Wal-Mart] associates would be encourages to rotate [highly placed cushions] down into the more accessible areas for customer access; is that correct?
A: We would call that zoning, so yes.
Q: Zoning?
A: Yes.
Q: Good zoning as in good safety practice; correct?
A: Yes." Floczak Dep. 4:4-4:11.

11

insufficient.[8]  In fact, the experience of Wal-Mart associate Rebecca Daniels, who assisted a customer with retrieving an overhead product just minutes prior to Plaintiff's fall, speaks to the contrary - that Wal-Mart anticipates that its customers seek out its employees for assistance as they have done in the past.

With regard to the second factor of the *Hutchison* analysis, Plaintiff has not convinced us that Defendant "failed to act" in "conscious disregard" of the risk of customer injury.  Wal-Mart responds by noting that it placed cautionary stickers alerting customers to the risk of climbing, it offered the services of its employees, upon request, to retrieve highly-placed merchandise with use of a ladder, and it encouraged its employees to relocate hard-to-reach products to more accessible heights.  There remains, however, argument over the reasonableness of these measures and whether they were properly implemented here.

Evidence that Daniels failed to lower the cushion at hand to a lower rack, while assisting another customer, is in and of itself insufficient to establish "wanton, willful or reckless conduct," though perhaps probative of negligence.   But "[o]rdinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." Hutchinson v. Penske Truck Leasing Co., 876 A.2d 978, 983-84 (Pa. Super. 2005), *aff'd*, 592 Pa. 38, 922 A.2d 890 (2007).  Wal-Mart's policy of relocating hard-to-reach products has been referred to by its store manager as a "good-safety" practice.  We are unconvinced that a lapse in good-safety practice, absent other evidence tending to show "outrageous[ness]" or "reckless[ness]," will support a claim for punitive damages.

---

[8]  Plaintiff cites *Yarkowsky v. The Caldwell Store, Inc.*, 189 Pa. Super. 475, 151 A.2d 839 (1959) and *Zito v. Merit Outlet Stores*, 436 Pa. Super. 213, 647 A.2d 573 (1994) to support its contention that a customer is held to a "lesser degree of attention" where retailers create "an attractive display of merchandise."  (Pl. Br. 4.)  Those cases, however, do not address the issue of punitive damages and are not relevant to our determination here.

**IV.     CONCLUSION**

Plaintiff has failed to come forward with sufficient evidence from which a juror would reasonably conclude that Defendant subjectively appreciated, or failed to act in response to, the risk that Plaintiff might climb and fall from the merchandise rack. This is fatal to her punitive damages claim. In that genuine issues of material facts remain in dispute with regard to liability, however, we decline to rule as a matter of law on that question. Accordingly, we will enter an order granting Defendant's motion in part and denying it in part.

An appropriate order follows.

/s/ David R. Strawbridge, USMJ  
DAVID R. STRAWBRIDGE  
UNITED STATES MAGISTRATE JUDGE
